GEORGE R. GREEN et al., appellants,

*v.*

SAMUEL GROOCOCK, administrator, respondent.

Where an administrator, in pursuance of a family arrangement for the
benefit of the widow and children of the deceased, disposed of the property in
such manner in connection with a lease on which the estate was liable, as to
realize more than could have been realized by disposing of it in the usual
way, taking into account the loss which the estate, but for the arrangement
(part of which was the assumption of the lease), must have met on the lease—
*Held*, that he was not liable under the circumstances, on certain notes taken
as part of the purchase-money of the property, and which he had failed to
collect.

Appeal from decree of Essex orphans court on final account
of an administrator.

· *Mr. E. C. Harris,* for appellants.

*Mr. J. G. Trusdell,* for respondent.

## THE ORDINARY.

Richard Green, then of Montclair in Essex county, died intestate in November, 1870. He left a widow and five minor children, the youngest of whom was seven and the oldest eighteen years of age. The respondent was appointed administrator of his estate on the 20th of December following, and William J. Best was appointed guardian of the children in May, 1871. At the time of his death, Mr. Green was a merchant doing business in a store in Broadway, in New York, in a building which he held under a lease at a rent of $10,000 a year up to May 1st, 1871, and $12,000 a year for two years from that date, that is, until May 1st, 1873. His business was what is called the "gentlemen's furnishing business." He had been in it, at that place and in another part of the city, for many years. He had at his death a large stock of goods in his store, together with business fixtures. The controversy between the parties is as to the liability of the administrator in reference to the stock and fixtures. They were appraised and inventoried at $40,-449.46, of which sum $38,449.46 were for the value of the stock and $2,000 for that of the fixtures. The administrator carried on the business for account of the estate up to the time, March 15th, 1871, when he sold the stock and fixtures to the business firm of Hutchinson & Smith, which was created at that time through the instrumentality of Mrs. Green and her friends, with a view to buying the stock and fixtures and lease, and continuing the business in the store. The firm consisted of Robert F. Smith, who had been a clerk in the store of Mr. Green, and Seymour A. Hutchinson, as general partners, and Mrs. Green as special partner. The only capital it had was $15,000 put in by Mrs. Green. The stock and fixtures were sold at private sale to the firm at $29,541.75. The price was made up as follows :

| | | |
|---|---|---|
| The amount of the appraisement less twenty per cent. discount...... ......... ............ ...... ......... | $32,000 | 00 |
| Increase of stock by purchases after Mr. Green's death ......... ...... ...... ...... ......... ...... ......... | 960 | 76 |
| | $32,960 | 76 |

| | | |
|---|---:|---:|
| Deduct amount of gross sales made after Mr. Green's death .............. | $4,329 09 | |
| Less estimated profit of twenty per cent. thereon ......... ...... ........... | 865 80 | $3,463 29 |
| | | $29,497 47 |
| Deduct also amount of rent (from February 1st, 1870, one-eighth of a year) assumed by the firm......... | $1,250 00 | |
| Less rent due from the under-tenant of the upper part of the building.. | 362 50 | 887 50 |
| | | $28,609 97 |
| Add interest on notes given on account of the purchase-money.......... ...... ........:. ...... ...... ...... | | 931 78 |
| | | $29,541 75 |

This sum was paid and secured as follows: $10,000 were paid in cash (out of the money contributed to the concern by Mrs. Green), and for the rest, $19,541.75, twelve notes of the firm, all dated March 16th, 1871, without security, were given. These notes were at two, three, four, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen and fifteen months, respectively, and were each for $1,550.83, and the interest from the date of the note until its maturity. The partnership was to continue for five years. By the agreement the general partners might draw annually from the firm for "living expenses" $2,500 each, and the special partner at her option might draw according to the estimated amount which probably would go to her credit for her share of the profits for the year. The partnership not proving successful, it was dissolved by mutual consent, at the end of two years—that is, in March, 1873—Hutchinson retiring. From that time the business was continued by Smith and Mrs. Green (they took the assets and assumed the payment of the debts), under the firm of R. F. Smith & Co., for about a year, when it was found necessary, by reason of the want of success, to

close it up.  All the capital was gone.  By agreement dated in June, 1874, between them and the administrator, they transferred all the assets to him in consideration of his assumption of all the debts and liabilities of the concern.  The administrator converted the assets thus acquired by him into money, and after paying all the other debts of the concern (which were not large comparatively), realized on account of his claim $1,854.10.  A few of the notes given to the administrator by Hutchinson & Smith for purchase-money were paid.  The amount so paid was $6,339.01.  The rest are unpaid.  They amount, not including interest from their maturity, to $13,202.74.  It appears, then, that the administrator received for the stock and fixtures sold to Hutchinson & Smith about $18,000, including some interest on those of the notes given on account of purchase-money which were paid.  The administrator claims allowance for the loss, on the ground that his conduct in the transaction was fair and honest.  It is also urged in his behalf that he was unwilling to accept the office of administrator, and only did so at the urgent request of Mrs. Green ; that he was induced, by representations made by her and a gentleman (Mr. William J. Best, afterwards the guardian of the children), to make the sale to the firm of Hutchinson & Smith, and that he only consented because it was a family arrangement which he was unwilling to oppose, having for its object the sale of the stock and fixtures at a better price than could otherwise have been obtained ; the retention of the business (which was supposed to be valuable) for the boys and the relief of the estate from the large rent for which it was liable under the lease.  That the administrator consented to the arrangement for the sale of the stock and fixtures to Hutchinson & Smith, only because it was believed that thereby a greater price might be obtained for them than otherwise could be got, and that thereby the family would be benefited, there is no reason to doubt.  The widow contributed all the capital to the firm, and it was not contemplated in the arrangement that either Hutchinson or Smith should contribute any.  Neither of them appears to have had any to contribute.  The fact that she contributed the $15,000 was the inducement to Hutchinson and Smith to enter

into the arrangement with her. It was supposed by her and her friend and adviser, Mr. Best, and by the administrator also, that by means of the firm and her contributing the $15,000, of which $10,000 were to go on account of the purchase-money of the stock and fixtures, and $5,000 for working capital, advantageous pecuniary results for the estate would be produced, not only in the price to be obtained for the stock, much of which was the residuum of a business of many years standing, and could be sold at retail with other and newer purchases to far better advantage than it could be disposed of at auction, but also in the price to be obtained for the fixtures, and in saving the estate from a heavy loss on the lease. The appraisement was in fact made by Smith (the administrator taking no part in it), and was not made with reference to the price which the property would probably bring at auction or forced sale. Mr. Scheitlin, who was a creditor of the estate to a very large amount, testifies that, in his judgment (and he seems to be able to give a reliable judgment on the subject), if the stock and fixtures and lease had been sold at auction, the result would have been, taking into account the loss which would probably have been met on the lease, that the estate would not have realized over $11,000 from them. He estimates the loss on the lease at $9,000, and is of opinion that the stock and fixtures would not have brought over $20,000, or fifty cents on the dollar of the appraisement. In considering the question of the liability of the administrator, who has acted in good faith in the whole matter, it would obviously be unjust not to take into account the character of the whole transaction, and judge him accordingly. He was, of course, on his final accounting, permitted to show that the appraisement was too high, and he did so. When it is urged that he in fact sold the property at the appraisement, and therefore is to be bound by it, the character and circumstances of the sale are to be taken into account. The sale was in fact to the widow; for, as before mentioned, it was her money with which the $10,000 of cash were paid on account of the purchase-money, and her money alone which constituted the capital of the concern, all of which, by the way,

was lost. She thus undertook to carry on the business in order to make a good market for the stock and fixtures for the benefit of the estate, and the copartnership was the means adopted to accomplish the purpose. The creditors are all paid in full. Evidently the widow has no ground of claim against the administrator. Were the claim made by the exceptants allowed, and the administrator thereby compelled to answer out of his own estate for the large deficiency claimed against him, equity would not permit her to take any part thereof under the circumstances. So far as the children are concerned, the question is whether the administrator should be held to account on the ground of the assumption that the sale to the firm of Hutchinson & Smith was, as against him, a test of the true value of the stock and fixtures, and therefore of the amount with which he is chargeable in respect thereof, and that the notes taken by him for purchase-money are to be regarded as notes made by a stranger for purchase-money in an ordinary sale would be; or whether the firms of Hutchinson & Smith and R. F. Smith & Co. are to be regarded as having, in a certain substantial sense, acted as agents of the estate in disposing of the stock and fixtures, and securing it against loss from the lease. The orphans court took the latter view, looking upon the matter as a family arrangement, and it is not only according to the justice of the case, but, in my judgment, clearly right, in every point of view. That the result has been more advantageous to the estate than a sale of the stock and fixtures and lease at public sale would have proved, I see no reason to doubt, and I see no just ground for surcharging the account. The decree of the court below will be affirmed, but without costs.